# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

WENDELL WEAVER #R47387,

        Plaintiff,

        v.

JACQUELINE MITCHELL, D.D.S,
and RANDY PFISTER,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Case No. 15 C 2950

Judge Virginia M. Kendall

## MEMORANDUM OPINION AND ORDER

Plaintiff Wendell Weaver, an Illinois inmate, has sued Defendants Jacqueline Mitchell, D.D.S. and Stateville Correctional Center Warden Randy Pfister for deliberate indifference to his serious medical needs under 42 U.S.C. § 1983 stemming from Plaintiff's receipt of allegedly inadequate dental care.[1]  Currently before the Court is Defendants' motion for summary judgment on all of Plaintiff's claims.  (Dkt. 111).  For the reasons set forth below, Defendants' motion is granted in part and denied in part. Plaintiff's claims against Defendant Randy Pfister in his individual capacity and his claims against both Defendants regarding the treatment for his #5 tooth are dismissed. Plaintiff's claims regarding his #12 tooth remain and will proceed to trial.

## BACKGROUND

The Court takes the relevant facts from the parties' Local Rule 56.1 statements of undisputed material facts and supporting exhibits:  (Dkt. 113), (Dkt. 124), and (Dkt. 127).  The Court construes the facts in the light most favorable to the nonmoving party—here Plaintiff.  *See*

---

[1] Plaintiff also sued dentists Michelle Brown, LaDeane Fattore, and Jane Doe.  *See* (Dkt. 45).  Plaintiff voluntarily dismissed his claims against Defendants Brown and Fattore-Bruno with prejudice during the course of these proceedings.  *See* (Dkt. 67).  Plaintiff's claims against Defendant Jane Doe were also dismissed and not reinstated.  (Dkts. 69, 70).

*Smego v. Mitchell*, 723 F.3d 752, 754 (7th Cir. 2013). The following facts are undisputed except where otherwise noted.

Plaintiff is an inmate housed at Stateville Correctional Center ("Stateville"). Defendant Dr. Mitchell is a dentist who worked in Stateville's Health Care Unit ("HCU"). Defendant Pfister is the current warden of Stateville; he has held this post since November 2015. (Dkt. 113) at ¶¶ 1–2. The previous Warden was Michael Lemke. As relevant here, Pfister served as an Assistant Warden of Operations at Stateville from December 2009 through May 2011, at which time he oversaw the prison's "operations," including security, maintenance, and dietary. *Id*. at ¶ 7. From May 2011 to November 2015, Pfister was employed at a different prison. *See* (Dkt. 113), Ex. 2 (R. Pfister Dep.) at 12:23–13:10.

At issue in this case is Defendants' treatment of two of Plaintiff's teeth, both of which Plaintiff eventually lost. Plaintiff first began experiencing dental issues in late 2007, when a dentist in the Stateville HCU determined that Plaintiff needed a filling in his right first bicuspid, known as his #5 tooth. (Dkt. 113), Ex. 1 (Answer to Am. Compl.) at ¶ 11. Plaintiff's cavity was examined and he was given a temporary filling in January 2008. *Id*. at ¶ 12. Later, a root canal was determined to be necessary, and "root canal treatment" was performed with Plaintiff's consent on June 6, 2008. (Dkt. 124) at ¶ 57. After multiple delays, the overall root canal procedure was completed on September 10, 2008. (Dkt. 113) at ¶ 23. Some of the delays were caused by lockdown situations, in which movement in the prison is restricted. During lockdowns, inmates with appointments but without emergency medical situations are rescheduled for another date. *Id*. at ¶ 12. Other of Plaintiff's appointments were cancelled when Plaintiff failed to attend the appointments and was listed as a "no show" on his dental records. An inmate may be listed as a "no show" due to circumstances within his control and also beyond

his control, including situations where security officers failed to escort him to the HCU. (Dkt. 124) at ¶ 63.

Plaintiff was next seen October 1, 2008 for a "final restoration," and Dr. Mitchell examined his #5 tooth. She noted in Plaintiff's medical records that the tooth had limited support and recorded that "patient advised he needs post + core + crown." (Dkt. 124) at ¶ 58; *see also* (Dkt. 113), Ex. 8 at IDOC00006. At her deposition, Dr. Mitchell testified that she believed that this course of treatment would have been "ideal" for Plaintiff in "terms of restoring." *See* (Dkt. 124-3) (J. Mitchell Dep.) at 168:7–11. However, Plaintiff was not given a post-core-crown procedure. (Dkt. 124) at ¶ 59. The parties dispute the rationale behind this decision. Plaintiff claims that Dr. Mitchell both told him and later testified that he was not provided the post-core-crown treatment due to an "unwritten rule" at Stateville against providing these restorative elements. *Id*. Although Defendants admit that Dr. Mitchell testified about an "unwritten rule" at Stateville, Defendants contend that Dr. Mitchell's testimony was that Stateville's "unwritten rule" is that the prison only provides treatment within the basic community standards for the regular non-incarcerated population. In this way, Defendants dispute that the "unwritten rule" specifically regards root canal restorative elements. *See* (Dkt. 127) at ¶ 59.

In any event, some five months later, Plaintiff's #5 tooth fractured. On March 16, 2009, Plaintiff filed a grievance (No. 1357), requesting medical attention and noting that his tooth had broken while he was eating ice the day before and that he was in pain. Plaintiff further noted Dr. Mitchell's comment following his root canal that he "need[s] something called 'a core & a crown' because root canals makes the tooth 'weak,'" but that "Stateville [doesn't] do" those procedures. Plaintiff complained about his root canal as incomplete and stated that his family would pay for the core and crown if necessary, emphasizing that he did not want to lose any

teeth. *See* (Dkt. 113), Ex. 7 (March 16, 2009 Grievance No. 1357) at IDOC000009 ("My question to whom ever [sic] is how could the dentist do a half . . . job? Meaning a root canal without a core and crown and especially 'knowing' how a root canal make a tooth weak?"); *see also* (Dkt. 124) at ¶ 60. According to the parties, Dr. Mitchell first reviewed and responded to the grievance on April 20, 2009. (Dkt. 124) at ¶ 73. Grievance No. 1357 was "reviewed" on July 29, 2009, and the results of the review were concurred with on August 4, 2009 (142 days after the grievance was filed). (Dkt. 113) at ¶ 24; *see also* (Dkt. 124-3), Ex. 11 (Grievance Officer Report). Ultimately, Plaintiff's #5 tooth was extracted two years later (after it broke once more) on March 24, 2011. *Id*. at ¶ 17.

Plaintiff was seen for his "two year examination" appointment shortly thereafter on April 6, 2011. *Id*. at ¶ 28. As a result of this and another examination, Plaintiff received a filling in his first left bicuspid—his #12 tooth—on August 29, 2011. *Id*. at ¶¶ 29–30. Following that procedure, Plaintiff made two requests for dental appointments. He consequently was scheduled to be seen on September 23, September 29, and October 19, but Plaintiff was a "no show" for those appointments. *Id*. at ¶¶ 31–34. Plaintiff made another appointment request that was received in November, and he was seen on November 28, 2011. At that appointment, his tooth and the associated pulp were "worked on." Defendants contend that Plaintiff was then offered the choice of a root canal or extraction, and Plaintiff opted for the root canal. *Id*. at ¶ 36. Plaintiff disputes that he was given this option or that he consented to a root canal for his #12 tooth. *See* (Dkt. 124) at ¶¶ 36, 61. Regardless, Dr. Mitchell began Plaintiff's root canal work on December 7, 2011, whereon portions of his tooth were "worked on." (Dkt. 113) at ¶ 38. Plaintiff was given a temporary filling. *Id*. at ¶ 40. Plaintiff claims that during this appointment, Dr. Mitchell told him that his #5 tooth had cracked and broken because "he needed a post and a

crown after any and all root canals." (Dkt. 124) at ¶¶ 22, 62; *see also* (Dkt. 113), Ex. 6 (Grievance N. M302) ("Dr. Mitchell inform[ed] me after she had started (the second) root canal without my consent, that the reason my first tooth cracked and broke was because I needed a 'post and a crown' after any/and all root canals . . . ."). Defendants dispute both that Dr. Mitchell discussed Plaintiff's #5 tooth on this date or that she stated that posts and crowns are needed after all root canals; Defendants instead contend that post and crown treatment is "partially cosmetic and not necessary, but does add support to the tooth." (Dkt. 127) at ¶ 62.

When the time came for Plaintiff's follow-up appointment six days later, the appointment was rescheduled because the medical staff "ran out of time" to see Plaintiff. Plaintiff's rescheduled appointment on December 22 was later cancelled due to "staff shortages". (Dkt. 113) at ¶ 39; *see also* (Dkt. 113), Ex. 1 at ¶ 42; (Dkt. 113), Ex. 8 at IDOC000012.

In early January 2012, Plaintiff requested an appointment because his temporary filling had come out; he was seen on January 9 and his #12 tooth again was "worked on." *Id*. at ¶¶ 40–41. On January 12, 2012, prior to his follow-up appointment scheduled for January 26, 2012, Plaintiff reported to the HCU that he was in pain. In response, Plaintiff was sent pain medication and antibiotics; his follow-up appointment was not advanced. *Id*. at ¶ 42. On January 26, 2012, Stateville was under lockdown and Plaintiff's appointment was rescheduled for February 8. Plaintiff was a "no show" for his February appointment, and it was rescheduled for April 20, 2012. Before that appointment could occur, on March 13, 2012, Plaintiff reported that his temporary filling again had fallen out. *Id*. at ¶ 44. Plaintiff was seen on March 29 and two root canal therapy sessions were scheduled—and conducted—in April. *Id*. at ¶¶ 45–46. Plaintiff's root canal on his #12 tooth was ultimately finished on May 15, 2012. *Id*. at ¶¶ 47–48. During the five months that passed between the initiation of the root canal and its completion, Plaintiff

claims that he suffered excruciating pain. (Dkt. 124) at ¶ 64. The parties dispute whether Plaintiff suffered any infections during this time, although they do not dispute that he was prescribed antibiotics in January. *Id*.; (Dkt. 127) at ¶ 64. Due to two lockdowns and Plaintiff's failure to attend a scheduled appointment, Plaintiff was not seen for his root-canal follow-up appointment until August 16, 2012. In addition, the day before this appointment, Plaintiff reported a "missing filling in his #12 tooth." *Id*. at ¶¶ 49–50. The filling was replaced at the August 16 appointment.

On February 4, 2013, Plaintiff filed a grievance (No. M302) complaining about the pain and suffering he endured through his two root canals at Stateville due to the multiple infections he contracted and the multiple times he needed to have his teeth re-worked before his root canals could be completed. (Dkt. 113), Ex. 6 (Grievance No. M302). Plaintiff complained that all of the dental work (and re-work) caused him "weeks of headaches," prevented him from eating, and "leaked" medicine in his mouth. Plaintiff further stated that approximately three weeks prior to the grievance date, the last tooth on which he had work done (presumably his #12 tooth) cracked, broke, went into his gums, and caused him to bleed for two days. Plaintiff relayed that he had made 10–15 appointment requests, but that he had not yet been seen. He further stated that he had swallowed part of his broken tooth while trying to eat. *Id*. Ultimately, Plaintiff complained that he had received inadequate dental care that had caused him to lose his teeth permanently. Plaintiff requested an emergency grievance hearing regarding Grievance No. M302; Plaintiff's request was denied by Warden Lemke on March 1, 2013. (Dkt. 113) at ¶ 15.

Plaintiff's medical records reflect that he then failed to attend four scheduled appointments from February to June of 2013, and that he had a biannual exam on July 10, 2013. (Dkt. 113), Ex. 8 at 118. He attended a follow-up appointment on December 18, 2013 and then

was not seen again until July 9, 2015 for his next biannual exam. *Id.* In the meantime, according to the parties, Grievance No. M302 was reviewed more than a year later on March 28, 2014 with Dr. Mitchell's assistance (*see* (Dkt. 7) at 7), and the results of the review were concurred with on April 2, 2014. *Id.* at ¶ 20. Plaintiff appealed this grievance to the Administrative Review Board, which made a (presumptively negative) "determination" on the grievance on September 5, 2014—579 days after the grievance was filed. *Id.* at ¶ 21.

Plaintiff filed suit on March 31, 2015. His amended complaint asserts five § 1983 claims for the violation of his Eighth Amendment rights: (1) failure to provide proper dental treatment against Dr. Mitchell; (2) failure to promptly reschedule treatment against Dr. Mitchell; (3) improper denial of medical treatment against Pfister; (4) failure to direct prompt treatment against Pfister; and (5) denial of emergency grievance against Defendant Pfister. *See* (Dkt. 45). Plaintiff seeks compensatory and punitive damages as well as injunctive relief in the form of an order requiring Defendants to perform the "full" root canal procedure or replace his lost teeth.

During the pendency of this lawsuit, on February 19, 2016 Plaintiff again complained to Stateville's dental staff that his #12 tooth had broken. The tooth was "treated"; it was not extracted. (Dkt. 113) at ¶ 51. In October 2016, Plaintiff reported a tingling in his #12 tooth, but he did not want it extracted. He was given antibiotics. *Id.* at ¶ 53. Ten months later, on July 18, 2017, Plaintiff was taken to an outside dentist—Dr. Glenn Scheive—for the extraction of two wisdom teeth. (Dkt. 124) at ¶¶ 66–67. During that appointment, Dr. Scheive determined that Plaintiff's #12 tooth had developed an abscess and that Plaintiff had sustained bone loss associated with the abscess. *Id.* at ¶¶ 65, 68–69; (Dkt. 124-2) (Scheive Dep.) at 59:23. The parties do not dispute that only "longstanding" abscesses cause bone loss. (Dkt. 124) at ¶ 70; (Dkt. 127) at ¶ 70. In addition, the parties agree that Plaintiff's abscess was likely caused by the

lack of a crown on his #12 tooth.  (Dkt. 124) at ¶ 71; (Dkt. 127) at ¶ 71.  Plaintiff consented to the extraction of his #12 tooth by Dr. Scheive.  (Dkt. 124) at ¶ 72.

## **LEGAL STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See* Fed. R. Civ. P. 56(a).  In determining whether summary judgment is appropriate, the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor (here, Plaintiff).  *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted).  Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party would bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, the moving party may meet its burden by pointing out to the court that "there is an absence of evidence to support the nonmoving party's case."  *Id*. at 324.

To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).  For this reason, the Seventh Circuit has called summary judgment the "put up or shut up" moment in a lawsuit—"when a party must show what evidence it has that would convince a trier of fact to accept its version of events."  *See Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007).  In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence in support

of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. 252.

**DISCUSSION**

**A.      Statute of Limitations**

Defendants first argue that Plaintiff's claims that Defendants were deliberately indifferent in treating his #5 tooth are untimely. "Claims brought under § 1983 are governed by the statute of limitations for personal-injury claims in the state where the plaintiff's injury occurred." *Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016). "In Illinois the statute of limitations for personal-injury actions is two years from when the cause of action accrued[.]" *Id*. While state law determines the length of the limitations period, "[f]ederal law . . . determines the accrual of a claim" brought under § 1983. *Wilson v. Giesen*, 956 F.2d 738, 741 (7th Cir. 1992). On this point, "[a] § 1983 claim to redress a medical injury arising from deliberate indifference to a prisoner's serious medical needs accrues when the plaintiff knows of his physical injury and its cause. The statute of limitations starts to run when the plaintiff discovers his injury and its cause even if the full extent or severity of the injury is not yet known." *Devbrow v. Kalu*, 705 F.3d 765, 768 (7th Cir. 2013).

As an additional point, "tolling principles . . . are borrowed from the forum state"—here, Illinois. *Bebout v. Thomas*, 409 F. App'x 27, 29 (7th Cir. 2011). Regarding tolling, the parties agree that the statute of limitations is tolled while a prisoner completes the administrative grievance process. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

Defendants argue that Plaintiff's claims concerning his #5 tooth accrued either on the date on which his root canal was completed (September 8, 2008) or on the date that tooth was extracted more than two years later (March 24, 2011). Even taking into account the tolling of the

statute of limitations during Plaintiffs two grievance proceedings (which Defendants calculate to be a total of 721 days or just about two full years), Defendants argue that Plaintiff's claims are untimely.  (Dkt. 112) at 6–7.  Plaintiff, on the other hand, argues that his complaint is timely by reason of the discovery rule, as, according to Plaintiff, he did not discover his #5 tooth injury until December 7, 2011—the date on which Plaintiff claims that Dr. Mitchell told him his tooth cracked because he needed a post and a crown.  (Dkt. 121) at 6.

Although the record supports Plaintiff's contention that Dr. Mitchell told Plaintiff on or around December 2011 that his #5 tooth cracked and broke because he needed and was not provided a post and a crown (*see* (Dkt. 113), Ex. 6 at 1), the record also indicates that Plaintiff was aware of his need for a post, core, and crown for his #5 tooth at an earlier date.  In particular, the record indicates that Dr. Mitchell noted in Plaintiff's medical records that his #5 tooth had limited support and that she "advised" Plaintiff that "he needs post + core + crown" on October 1, 2008.  (Dkt. 124) at ¶ 58.  Moreover, Grievance No. 1357, dated March 16, 2009—the day after Plaintiff's #5 tooth cracked while he was eating ice—demonstrates that Plaintiff was aware of that a doctor had noted that he needed a core and crown after the root canal on his weakened #5 tooth and also that Plaintiff was aware that such procedures were not performed.  *See* (Dkt. 113), Ex. 7 at 1.  Giving Plaintiff the benefit of the doubt and using the March 16, 2009 accrual date and also taking into account the maximum tolling suggested by the parties—721 days for both grievances—the two-year statute of limitations began to run on Plaintiff's claims regarding his #5 tooth at the latest on March 7, 2011, and the limitations period therefore expired on March 6, 2013.  Seeing that Plaintiff's complaint was not filed until more than two years later on March 31, 2015, the Court agrees with Defendants that Plaintiff's claims regarding his #5 tooth are time-barred.

**B.      Individual Capacity Claims Against Warden Pfister**

Plaintiff seeks damages from Warden Pfister individually for his alleged denial of "proper dental treatment through the establishment of, or acquiescence to, prison policies forbidding such care," (Dkt. 45) at ¶ 85; failure to "direct the dental staff to promptly reschedule treatment appointments," *id*. at ¶ 93; and denial of emergency grievance relief, *id*. at ¶ 101. Pfister can be held individually liable under § 1983 only if he "caused or participated in" the alleged deprivation of Plaintiff's Eighth Amendment rights. *Vance v. Washington*, 97 F.3d 987, 991 (7th Cir. 1996) (citation omitted). In other words, a prison official cannot be sued under § 1983 merely because he serves in a supervisory role. *See Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). Nevertheless, a plaintiff's allegations against a prison official can satisfy "the personal responsibility requirement of Section 1983 if the conduct causing the constitutional deprivation occurs at [the official's] direction or with his knowledge and consent." *Arnett v. Webster*, 658 F.3d 742, 757 (7th Cir. 2011) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). "That is, [the official] must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id*. "In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery." *Id*.

Generally, if non-medical officials rely on decisions made by medical personnel they are not liable under the doctrine of deliberate indifference. *Id*. at 755. Because of the importance of the division of labor and expertise, non-medical officials are justified in "believing that the prisoner is in capable hands" if the prisoner is under the care of a medical expert. *Id*. (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). Still, non-medical officials cannot simply ignore a prisoner's serious medical needs. *Id*. If the non-medical officials know or have reason to know "that prison doctors or their assistants are mistreating (or not treating) a prisoner" they

may be liable for deliberate indifference.  *Hayes v. Snyder*, 546 F.3d 516, 525 (7th Cir. 2008) (quotation omitted).

Here, Plaintiff argues only that Pfister is a proper defendant in this action because he is the "final policymaker at Stateville" and therefore has responsibility for ensuring that inmates like Plaintiff receive proper and prompt dental treatment.  *See* (Dkt. 121) at 5.  Plaintiff has not pointed to any evidence that suggests that Pfister knew about Plaintiff's dental care needs, let alone ignored them, during his tenure as warden of Stateville, which, notably, commenced more than three years after Plaintiff's root canal on his #12 tooth was completed.  In fact, the parties do not dispute that over the course of Plaintiff's dental treatment, Pfister did not discuss Plaintiff's dental care with Dr. Mitchell or any other dental professional.  (Dkt. 113) at ¶ 14; (Dkt. 124) at ¶ 13.  To the extent that Pfister was or should have been aware of an "unwritten" policy against using posts, cores, and crowns in connection with root canals at Stateville, there is no evidence that he had any knowledge of this policy's application to Plaintiff from November 2015 to the present.  Finally, the evidence in the record does not indicate that Pfister had any involvement in Grievance No. M302 concerning the treatment of Plaintiff's #12 tooth, which was filed, reviewed, and appealed all during 2013 and 2014 while Pfister was not employed at Stateville.  Accordingly, there is no evidence that Warden Pfister was ever aware that Plaintiff had not received a post, core, and crown for his #12 tooth following his 2012 root canal or that Plaintiff was having issues with his #12 tooth at any point.  Consequently, Plaintiff's individual capacity claims against Warden Pfister must be dismissed.  In any event, Plaintiff's arguments concerning Pfister's liability pertain to his maintenance of an allegedly constitutionally defective policy (*see* (Dkt. 121) at 5); such arguments are more properly analyzed under Plaintiff's official capacity claim against Pfister.

**C.    Deliberate Indifference to a Serious Dental Need**

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they display deliberate indifference to serious medical needs of prisoners." *Hayes*, 546 F.3d at 522; *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  To establish a deliberate indifference claim under this standard, a plaintiff must show (1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition.  As to the first element, dental needs may constitute objectively serious medical needs, and Defendants do not dispute that Plaintiff's dental needs were serious.  *Board v. Farnham*, 394 F.3d 469, 480 (7th Cir. 2005) ("At the outset, we reiterate our view that 'dental care is one of the most important medical needs of inmates.'") (quoted cites omitted).  "Tooth decay can constitute an objectively serious medical condition because of pain and the risk of infection."  *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *see also McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).  Therefore, the question is whether a rational juror could find, on the evidence in this record, that Defendants were deliberately indifferent to Plaintiff's dental needs.

"Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm . . . exists, but the defendant disregards that risk."  *Berry*, 604 F.3d at 440.  "A significant delay in effective medical treatment . . . may support a claim of deliberate indifference, especially where the result is prolonged and unnecessary pain."  *Id*. at 441 (claim that physician refused to refer inmate to dentist survived summary judgment where refusal "resulted in a substantial and unnecessary delay in the treatment of his decaying tooth.").  However, the "Constitution is not a medical code that mandates specific medical treatment," *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008), and the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires

"reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). "[E]vidence that another doctor would have followed a different course of treatment is insufficient to sustain a deliberate indifference claim." *Burton v. Downey*, 805 F.3d 776, 786 (7th Cir. 2015). Rather, "medical professionals . . . are entitled to deference in treatment decisions unless no minimally competent medical professional would have so responded under the circumstances at issue." *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013). In other words, "[w]hen a medical professional acts in his professional capacity, he may be held to have displayed deliberate indifference only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* Ultimately, the "decision of a medical professional to do nothing, even though she knows that a patient has a serious medical condition requiring prompt treatment that the professional is capable of and responsible for providing, amounts to deliberate indifference." *Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 940 (7th Cir. 2015).

### 1.     Dr. Mitchell

Plaintiff's personal capacity claims against Dr. Mitchell contend that she failed to provide proper treatment for his #12 tooth and that she failed to promptly schedule treatment for his tooth—all of which caused him pain and led to the development of an abscess and the eventual loss of his tooth. As to the overall treatment of Plaintiff's #12 tooth, Defendants argue that Plaintiff received a significant amount of dental work and his dental needs were not ignored. (Dkt. 112) at 8. However, that the prisoner received some treatment does not foreclose his deliberate indifference claim if the treatment received was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate his condition." *Arnett*, 658 F.3d

at 751 (citation omitted). Having carefully reviewed the evidence, the Court concludes that a reasonable jury could conclude that Dr. Mitchell's responses to Plaintiff's dental needs for his #12 tooth amounted to deliberate indifference.

### i. Treatment Delays

The Court first considers Plaintiff's claim that Dr. Mitchell failed to provide him with prompt dental treatment. Neither a minor delay in treatment nor an inmate's disagreement with a physician's recommended course of treatment constitutes deliberate indifference. *Barry*, 604 F.3d at 442; *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007). Where a delay in treatment is minimal and has no adverse consequences, the medical provider responsible for that delay is not deliberately indifferent. *See Knight*, 590 F.3d at 466.

The undisputed record reflects that the delays in performing and completing the root canal on Plaintiff's #12 tooth were neither minor nor free of adverse consequences. Plaintiff's root canal was initiated on December 7, 2011 and it was not considered complete until May 15, 2012—approximately five months later. Defendants have not offered any medical reason for the lengthy delay. Instead, they point to the fact that Plaintiff failed to show up for dental appointments on twelve occasions over a much larger time period—March 28, 2011 to June 6, 2015. *See* (Dkt. 112) at 9. Looking instead to the root canal time period at issue, Plaintiff's appointments were rescheduled and his treatment was delayed due to a combination of the dental staff "running out of time" to see him (12/13/11), staff shortages (12/22/11 & 4/20/12), lockdown (1/26/12), Plaintiff's absence (2/8/12), and drainage in one of Plaintiff's canals (4/17/12). Accordingly, the record does not support the conclusion that Plaintiff was responsible for the delay.

In addition to the major delays in Plaintiff's root canal treatment, Plaintiff has produced sufficient evidence to demonstrate that he suffered adverse consequences on account of the delay. Specifically, Plaintiff's dental records reflect that his temporary fillings fell out on at least two occasions while he was waiting for the procedure to be completed (on 1/5/12 and 3/13/12) and Plaintiff reported being in pain during this time (on 1/12/12). *See* (Dkt. 113), Ex. 8 at IDOC000012. Not only that, the evidence raises the inference that Plaintiff suffered an infection during the delays, as he was prescribed antibiotics in January 2012. When considered along with Plaintiff's statements in Grievance No. M302 that the lengthy root canal procedure required that his canals be "reopened" with drills five or six times and caused him undue pain and suffering, including weeks of headaches and the inability to eat for weeks, a jury could look at this pattern of delay and pain and infer deliberate indifference. *See Petties v. Carter*, 836 F.3d 722, 730 (7th Cir. 2016), *as amended* (Aug. 25, 2016) (evidence of an inexplicable delay in treatment which serves no penological interest can support an inference of deliberate indifference along with evidence that the delay exacerbated the injury or unnecessarily prolonged pain); *see also Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008) ("[A] delay in the provision of medical treatment for painful conditions—even non-life-threatening conditions—can support a deliberate-indifference claim, . . . so long as the medical condition is 'sufficiently serious or painful.'"). This is particularly true because Dr. Mitchell offered no medical justification for the more than five month delay. *See Smego*, 723 F.3d at 757 (involving a 3-week root canal and concluding that a jury could find unexplained delays constituted deliberate indifference).

The record also reflects that Dr. Mitchell unnecessarily delayed providing Plaintiff dental treatment after his #12 tooth broke in 2013. Defendants argue that after Plaintiff's #12 filling was replaced on August 16, 2012, "Plaintiff had no complaints regarding his #12 tooth until

16

February 19, 2016." (Dkt. 112) at 9. But Defendants' statement is directly belied by numerous documents in the record before the Court, not the least of which is Grievance No. M302 in which Plaintiff complains that his #12 tooth broke mid-January 2013 and caused his gums to bleed for two days and that his requests for treatment by the dentists at the HCU went unanswered for at least three weeks. *See* (Dkt. 113), Ex. 6 at IDOC000003. At the very latest, the HCU was aware of Plaintiff's request for an appointment by February 8, 2013, when a dentist documented the appointment request in Plaintiff's medical records. See (Dkt. 113), Ex. 8 at IDOC000017. Even though Plaintiff's medical records indicate that he then failed to show up for four appointments, they also reflect that he ultimately was not seen until five months after the date of his grievance on July 10, 2013, despite the severity of his complaints. (Dkt. 113), Ex. 8 at IDOC000017. This was not reasonable. "Even a layperson knows that teeth do not normally break spontaneously or need sudden extraction absent a serious, preexisting problem." *Stanbridge v. Mitchell*, 2011 WL 5330642, at *6 (C.D. Ill. Nov. 7, 2011).

Again, minimal delays are not actionable, and delays in treating non-emergency conditions can be expected in any dentist's office, particularly so in Plaintiff's environment. *Berry*, 604 F.3d at 442. However, many months of delay can amount to deliberate indifference, depending on the severity of the condition and the pain. *Id.* (two-month refusal to refer prisoner to dentist for serious tooth pain could amount to deliberate indifference). Here, Dr. Mitchell's delay in examining Plaintiff following his complaints of a broken tooth that injured his gum could amount to deliberate indifference, particularly in light of the statements concerning the extent of Plaintiff's pain and suffering in the grievance. Indeed, far shorter delays of treatment for broken teeth have been found to indicate deliberate indifference. *Cf. Green v. Beth*, 663 F. App'x 471, 474 (7th Cir. 2016) (allegation that inmate was forced to wait six days for treatment

for a broken tooth stated a claim for deliberate indifference). In sum, summary judgment is not appropriate on Plaintiff's claims that Dr. Mitchell acted with deliberate indifference in delaying the treatment of his #12 tooth.

### ii.        Lack of Proper Treatment

The Court next considers Plaintiff's claim Defendants failed to provide him with proper dental treatment, including Dr. Mitchell's provision of a root canal without Plaintiff's consent and Dr. Mitchell's failure to identify and treat Plaintiff's longstanding abscess. (Dkt. 121) at 7–8. As to the issue of whether Plaintiff consented to the root canal on his #12 tooth, Plaintiff claims that he did not consent, and also that Dr. Mitchell should have known from her review of Grievance No. 1357 that Plaintiff "had voiced reservations about the procedure." (Dkt. 124) at ¶ 61; (Dkt. 121) at 7. Defendants fail to respond to this argument, although they dispute the associated fact statement with Dr. Mitchell's deposition testimony that she needs permission before undertaking any patient treatment plan. (Dkt. 127) at ¶ 61; *see also* (Dkt. 7) at 7 (Dr. Mitchell's statement to a grievance officer that "Mr. Weaver never expressed that he did not want the treatment and services."). Given this disputed issue of material fact, summary judgment is inappropriate on this aspect of Plaintiff's claim. *Russell v. Bd. of Trs. of Univ. of Ill. at Chi.*, 243 F.3d 336, 340 (7th Cir. 2001) ("summary judgment is a singularly inappropriate time to resolve a 'he said, she said' kind of dispute.").[2]

As to Dr. Mitchell's failure to diagnose and treat Plaintiff's abscess, a prison dentist is deliberately indifferent by failing to treat this particular condition promptly, thereby "prolonging the patient's pain while knowing that the patient may well be in serious pain that is treatable." *Dobbey*, 806 F.3d at 940. In *Dobbey*, the same Dr. Mitchell failed to treat a prisoner's abscessed

---

[2] Defendants do not argue that the performance of a dental procedure without consent does *not* constitute a constitutional violation, and accordingly, the Court will not analyze that argument here.

tooth for sixteen days from the date on which a prison medical technician discovered the plaintiff's abscessed tooth. *Id*. at 939. Over the course of those sixteen days, the plaintiff was in pain, but the Dental Unit canceled two of his appointments for treatment without providing a satisfactory explanation for the cancelations. *Id*. Accordingly, the Seventh Circuit overturned the district court's grant of summary judgment in favor of the defendants because the record demonstrated sufficient evidence of deliberate indifference so as to create a jury issue. *Id*. at 941. Similarly, in *Karim v. Obaisi*, 2017 WL 4074017, at *6 (N.D. Ill. Sept. 14, 2017), this Court found that a more than two-month delay in treating an inmate's diagnosed abscess could qualify as deliberate indifference.

In this case, the first time Plaintiff was diagnosed with an abscess was on July 17, 2017 by Dr. Sheive. However, Plaintiff has presented evidence that he developed the abscess at an earlier date. Specifically, Dr. Scheive determined that Plaintiff's abscess caused bone loss and the parties are in agreement that an abscess will not cause bone loss immediately; only a longstanding infection will have this effect. (Dkt. 124) at ¶ 70; (Dkt. 127) at ¶ 70. In light of the parties' agreement that Plaintiff's abscess had been "longstanding" as of July 2017, the record contains evidence that indicates that Dr. Mitchell at least should have been aware of the serious possibility that Plaintiff's #12 tooth could become (or already was) infected, such that her failure to recognize and treat the abscess could be considered a substantial departure from accepted professional standards. *Holloway*, 700 F.3d at 1073. This is particularly true when considered along with the policy against providing restorative elements and Dr. Sheive's testimony that the lack of a crown caused Plaintiff's abscess, which is discussed in Section C.2, *infra*.

Specifically, Plaintiff's medical records contain the following information. When Plaintiff was seen on February 19, 2016 for his broken #12 tooth, a dentist other than Dr.

Mitchell noted that Plaintiff's tooth had separated from the amalgam filling, but that it was still attached to the root. According to the notes, Plaintiff's tooth was x-rayed and he declined an extraction. *See* (Dkt. 113), Ex. 8 at 118. The notes indicate that Dr. Mitchell was aware of the February 19 appointment. *Id*. at 119. Plaintiff was not seen again until nine months later, on October 20, 2016, after he complained of pain in his root canal tooth. Plaintiff again refused extraction and was given a limited supply of painkillers and antibiotics. *Id*. at 125. Next, Plaintiff requested an exam and was seen on February 3, 2017, after the filling "fell out" of his #12 tooth. *Id*. At that appointment, the treating dentist extracted "pieces" of the broken tooth from Plaintiff's mouth and Plaintiff reported that "the area" was numb. The treating dentist made a note of the appearance of the root of the tooth in Plaintiff's records and also noted that Plaintiff was not experiencing pain or swelling. Extraction was discussed and Dr. Mitchell consulted with Plaintiff at this time. *Id*. More than one month later, on March 23, 2017, Plaintiff was seen again for pain in his "upper jaw" and he was again advised that what remained of his #12 tooth needed to be extracted, which he again refused. He was prescribed a limited amount of painkillers and other medications (most likely antibiotics). Plaintiff was seen a few other times at the HCU before his July appointment with Dr. Sheive, but none of the appointment entries note specific treatments for Plaintiff's tooth outside of the recommendation that the tooth be extracted. *Id*. at 126–127.

In short, during the eighteen or so months after Plaintiff was seen for his broken #12 tooth and after a dentist noted that Plaintiff's tooth had separated from the root-canal filling, Plaintiff was only seen a handful of times by the HCU—mostly on account of his complaints of pain and appointment requests. And as for treatment, even in light of Plaintiff's broken tooth, Plaintiff was only prescribed small amounts of painkillers and antibiotics and advised that the

tooth should be extracted. This evidence, coupled with the fact that Plaintiff eventually developed an infection that somehow went completely undetected by Dr. Mitchell could lead a jury to find Dr. Mitchell's failure to diagnose and treat Plaintiff's abscess was more than non-actionable medical malpractice and in fact constituted deliberate indifference of a serious medical need. Dr,. Mitchell's knowledge of Plaintiff's dental history regarding his #12 tooth and Plaintiff's reported symptoms create a question of fact for the jury as to whether her failure to identify and treat Plaintiff's abscess was blatantly inappropriate and constituted an unreasonable response to the serious risk of infection presented. *See Petties*, 836 F.3d at 730 (less efficacious treatment—chosen without the exercise of professional judgment—can constitute deliberate indifference); *cf. Turner v. Cox*, 569 F. App'x 463, 467–68 (7th Cir. 2014) (where record lacked evidence that plaintiff's symptoms were consistent with h. pylori, defendants' responses to his complaints were not so far afield of professional standards as to establish lack of professional judgment). As to whether Dr. Mitchell's treatment of Plaintiff's #12 tooth was constitutionally adequate, Defendants' motion is denied.

### 2. No Restorative Element Policy

Finally, Plaintiff claims that Defendants violated the Eighth Amendment by maintaining an unwritten policy under which root canals are performed, but the restorative elements of posts, cores, and crowns are never provided. Plaintiff argues that this policy led to the development of an abscess in his #12 tooth, causing bone loss and necessitating the extraction of the tooth. Plaintiff has sued Warden Pfister in his official capacity on this count and seeks an injunction requiring the replacement of his lost tooth. (Dkt. 45) at 15; *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-

capacity actions for prospective relief are not treated as actions against the State."). Pfister is the appropriate defendant for this type of relief, as he has custody of Plaintiff and who "would be responsible for ensuring that any injunctive relief is carried out." *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011).

On the whole, Defendants fail to respond to Plaintiff's arguments about the constitutional fitness of what the Court will call the "no restorative element" policy. A party waives arguments not presented to the district court in response to summary judgment motions. *See Laborers' Int'l Union v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999). Although Defendants make a passing statement on reply that the record does not "support a finding of a policy or practice to deny medical care," this statement unsupported and it misses the mark as Plaintiff has not alleged that Defendants are responsible for a general policy to "deny medical care."

In any event, the Court finds that Plaintiff has presented sufficient evidence to create a triable issue on this claim. First, viewing the evidence in the light most favorable to Plaintiff, he has sufficiently demonstrated a question of fact as to whether Stateville operates under a policy that no restorative elements are provided in connection with root canals under any circumstances. Although Defendants dispute the existence of the policy as specified by Plaintiff and instead argue that the policy instead is that Stateville "only provides treatment that would be within the basic community standards for the regular non-incarcerated population," Dr. Mitchell's deposition testimony on this point was equivocal:

> Q.   Why was this procedure not performed?
> A.   Because we don't provide posts, cores and crowns.
> Q.   Why do you not provide posts, cores and crowns?
> A.   It's just not a service that we provide. It's not considered community standards or the – we base our services off of what would be the basic community standards for just the regular population that would go let's say to a public health clinic or whatever. *Most of the time*[,] post and cores and crowns are not provided.
> * * *

Q. Where is that standard – how is that standard determined?

A. I guess – how is that standard? I think that everything is based upon what is basic general dentistry as opposed to services that – *I guess that – I guess would cost more or whatever*. . . . So we do more basic or restoration as opposed to a crown; so he can get a filling, but not a crown.

Q. Is that community standard written down?

A. I think that there is just a policy that we don't do crowns and bridge work in the Department of Corrections.

Q. So that is a Department of Corrections policy?

A. Yes.

(Dkt. 124-3) at 168:15–169:2, 169:11–170:5 (emphasis added).

However, the second part of this analysis—whether the alleged policy violated Plaintiff's Constitutional rights—presents a more difficult question. Although Plaintiff has set forth sufficient evidence to create a triable issue as to whether the "no restorative element" policy violates the Eighth Amendment with regard to his #5 tooth because (1) Dr. Mitchell specifically advised Plaintiff that he needed a post, core, and crown on his #5 tooth, (2) Dr. Mitchell did not provide such restorations because of the policy, and (3) Plaintiff alleges that Dr. Mitchell told him his #5 tooth was further injured and later extracted because of the lack of restoration, those claims are time barred and will not be considered here. The Court instead must look at whether the policy was implicated during the treatment of Plaintiff's #12 tooth.

The record reflects that Dr. Mitchell started a root canal on Plaintiff's #12 tooth in late 2011 and completed the procedure in May 2012. The record does not reflect that Dr. Mitchell or any other treating dentist at Stateville believed a post, core, or crown were necessary for Plaintiff's #12 tooth or that Plaintiff was advised of the same. Again, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. "A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is so blatantly inappropriate as to

evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). However, Plaintiff has provided the undisputed testimony of Dr. Sheive that the lack of a crown "likely caused" Plaintiff's later developed abscess—that is, the lack of a crown "likely caused" a serious aggravation of the Plaintiff's condition, considering the well documented seriousness of dental abscesses. *See Dobbey*, 806 F.3d at 940 ("A tooth abscess is not a simple toothache. It is a bacterial infection of the root of the tooth, and it can spread to the adjacent gum and beyond—way beyond. It is often painful and can be dangerous. Loss of the tooth is common, though can sometimes be prevented by prompt detection and treatment of the abscess."). The record before the Court therefore reflects the possibility that Plaintiff's #12 tooth injuries, including the ultimate loss of the tooth, could have been caused by the no restorative element policy. Specifically, Dr. Sheive's testimony about the potential cause of the abscess, combined with Dr. Mitchell's testimony indicating that restorative elements are sometimes provided under the community standard, but that they are never provided at Stateville—seemingly for economic rather than medical reasons—is sufficient to create an issue for trial as to whether the "no restorative element" policy violated Plaintiff's Eighth Amendment rights.[3]

In reaching this conclusion, the Court is aware that the Seventh Circuit has repeatedly found that prison policies offering extractions and not root canals do not violate the Eighth Amendment. *See Mathews v. Raemisch*, 513 F. App'x 605, 607 (7th Cir. 2013) ("The district court correctly found that the prison is offering [the plaintiff-inmate] an extraction procedure and

---

[3] The Court notes that Defendants' reply brief and Plaintiff's medical records ((Dkt. 113), Ex. 8) indicate that Plaintiff may have been "scheduled for dental implants" at some point in 2017, although the documents are not clear as to whether Plaintiff received an implant for his #12 tooth. *See* (Dkt. 126) at 2; *see also* (Dkt. 113), Ex. 8 at 126 ("4/20/17: patient's denture was denied by Wexford"). Because the only relevant injunctive relief sought by Plaintiff at this time is replacement of his lost teeth, if Plaintiff has received an implant to replace his #12 tooth, his official-capacity claim against Warden Pfister seeking the same relief will be moot.

that this dispute is over nothing but the choice of one routine medical procedure versus another. That is not enough to prove an Eighth Amendment claim of deliberate indifference."); *see also McGowan*, 612 F.3d at 641 ("[The plaintiff's] complaint focuses only on [the defendant's] decision to extract the tooth rather than to fill it . . . . [I]n the end, this dispute is over nothing but the choice of one routine medical procedure versus another, and that is not enough to state an Eighth Amendment claim."). But the no restorative element policy alleged by Plaintiff here is different than the policies in those cases, because instead of giving an inmate the choice of one acceptable procedure over another, the policy alleged by Plaintiff creates a risk that in at least some inmate dental cases, restorative procedures following root canals, which may be necessary to prevent more serious dental conditions, will not be performed. By Dr. Mitchell's testimony, this is not because the restorative procedures are never medically necessary; it is because of the fact that such procedures sometimes *can* be purely cosmetic or "ideal" and because of their cost.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment (Dkt. 111) is granted in part and denied in part. The Court grants the motion on Plaintiff's claims regarding his #5 tooth and his claims against Warden Pfister in his individual capacity. The motion is denied in all other respects.

_____
Hon. Virginia M. Kendall
United States District Judge

Date: January 4, 2018